The next matter number 1 8 1 4 2 2 Sylvester J Brito jr. versus Prospect CharterCare at all. You're the appellee in this case? I would have made the same mistake. Your Honor, I would like to reserve three minutes for rebuttal. Yes. The facts in Brito are essentially identical to what we just argued in the Condoregas case. The only difference is that obviously we have Mr. Brito instead of Mr. Condoregas. However, the signatories to the subject letter agreement are identical. They are dated the same date. They are signed by the same people. The only difference is the handbook is definitely part of the record in the Brito case. And there's an additional argument of procedural unconscionability in the Brito case as well. Is the arbitration agreement included in the handbook? No, the reference in the handbook to the arbitration agreement is as follows by me, Your Honor. All employees are required to sign an agreement to arbitrate their employment disputes as a condition of employment. So it references that you have to sign an agreement to arbitrate. But it doesn't annex it, I guess, as in the Salazar case. So in Salazar, the arbitration agreement was included in the handbook. The court pointed to that. Yeah, it's annexed. And again, in our case, my point is we have a signed handbook in Salazar. We have a signed letter agreement in Brito. And that signed letter agreement references says you must sign the arbitration agreement. Additionally, what you have in Brito is you have the handbook which says, hey, you have to sign this. And oh, by the way, we may add, delete any policies, procedures, work rules, or benefits stated in this handbook. Or in any other document except for the policy of at-will employment set forth herein. Again, I don't know construing, giving a fair reading to this global onboarding employment arrangement. Given a fair reading to the overall employment arrangement. And remember, these are signed. Certainly the letter agreement and the arbitration agreement are signed simultaneously. They are delivered simultaneously. The arbitration agreement is referenced in the letter agreement. It says you have to sign it as part of the letter agreement and you must return it as part of the letter agreement. Here also you have the handbook which says, hey, by the way, we could change any of these documents at any time. And you've got to sign and acknowledge that. So I don't know how the employer can divorce itself and say that, oh, no, we're bound by this document. And again, if the employer is not bound to arbitrate, then- I mean, that's a big if. All right. Even if the employer has reserved the right to change the documents, there's nothing in the paperwork that suggests that that change can be affected retroactively. Prospectively, yes, the employer can change the documents. But if there is a claim that arises on Monday and on Tuesday the employer decides to opt out of arbitration, cancel the arbitration agreement, that doesn't affect the arbitrability of the Monday claim. There's nothing in the paperwork that would suggest that kind of retroactive effect. It would certainly affect whether or not the document was enforceable to begin with. But that's a different question. Because if you have an arbitration- let's bear with me hypothetically. You have an arbitration agreement. And the arbitration agreement is exactly like the arbitration agreement in this case. It's a standalone arbitration agreement. But it has one additional sentence. And the additional sentence says, and the employer can cancel this agreement prospectively at any time. I struggle with the notion that that agreement would be deemed illusory. All right? Because it would still bind the employer as to anything that happened up to the time of cancellation. Your Honor, we cite numerous cases. And I think my sister even acknowledges that where an employer may modify at any time an arbitration agreement, that it's not enforceable. So it doesn't matter whether- when they do it or if they ever do it. Because it's just not enforceable. So you don't get to the point where, okay, there's a dispute and now we're going to arbitrate it. It's like, no you're not, because there was never an enforceable agreement to begin with. I hope that answers your question, Your Honor. Well, it doesn't, but I understand your position. Again, Your Honor, it's a position as I understand it with about a dozen cases that we've cited. One thing that disturbs me in Brito- You're saying it goes to the mutuality. Yes. Would you like me to- Because it can be modified at any time, including retroactively, there's no mutuality. Correct, Your Honor. But where do you come up with the retroactively? I would agree if it could be modified at any time, including retroactively. But I don't see anything here that bears that construction. Your Honor, I don't mean to deflect your question, but the case law, J.P. Livery, Holliston, all indicate very clearly, if you reserve the right, not whether you have exercised it or not, but if you reserve the right at any time to comply or not comply or make a change, then you don't have an enforceable agreement. It doesn't matter whether you do it retroactively or not, you just don't have an agreement that you can enforce. Well, that's true, but those cases, almost without exception, maybe without exception, those cases are all cases where the consideration for the arrangement that's relied on is the mutuality of agreement, right? We've got a situation here where the consideration isn't necessarily the mutuality of agreement, where the consideration is the continued at-will employment. And in my mind, that's a much different situation. Your Honor, if I just may address that briefly. You don't have an enforceable arbitration arrangement if it is not mutual. That provision, that clause, is not enforceable because you may change it or modify it at any time. That goes to, I think, both policy and Rhode Island law. Thank you. You've reserved some time. Good morning again, Your Honors. I would like to address the mutuality of obligation that my brother discussed. In a unilateral contract, so a contract where there's promise and performance in return, thereby forming a unilateral contract, mutuality of obligation cannot be required. Mutuality of obligation, if you look at Corbin on Contracts, Section 6.1, there is an informative discussion of this. But it's somewhat false to say that mutuality of obligation is required in every contract. Number one, where there is consideration, as Judge Sillian noted, I'm going to employ you, you're going to work for me, that could be deemed a mutuality of obligation. But it's better seen in the context of, really, contracts only need consideration. And when you look, this issue was raised for the first time in the reply brief by the plaintiff in this case. If you look at the restatement of contracts, it says if the requirement of consideration is met, there is no additional requirement of mutuality of obligation. If every contract required mutuality of obligation, there could be no unilateral contracts. And that is not the law of the state of Rhode Island. So that simply can't mean that it is required in every case. When you look at the Rhode Island cases that do assess, analyze these two elements, they take the very same facts that support consideration, and they say that's also mutuality of obligation. One case is Ross Simon of Warwick, Inc. versus Baccarat. That's a District of Rhode Island case from 1998. Another case is a Rhode Island Superior Court case cited by the plaintiff, Hamanoff versus Forte. If you look at what the court analyzes there, the same facts that support the mutuality of obligation support the consideration. And J.P. Livery Services versus Rhode Island Department of Administration takes a more modern approach that's more in line with what's suggested in Corbin on contracts. In that case, it actually says bilateral contracts require mutuality of obligation, which makes sense. But unilateral contracts simply cannot. And that is any kind of a contract that you make with an at-will employee because the very nature of the at-will employment relationship is that it can be changed at any time. Let's talk a little bit about the prospective versus retrospective change that Justice Celia asked my plaintiff's counsel about. No, no. It's not justice. It's judge. In the federal system, the only justices are on the banks of the Potomac. Very good. And the best way to remember that is there is no justice in the Court of Appeals. I'm hoping to change that here today. Thank you, Judge. I appreciate that. If you assume that what the plaintiff is saying is true, that the employee handbook has this reservation of rights clause and that somehow defeats the standalone arbitration agreement, even if you adopt that view, the handbook anticipates that there will be notice of changes. And if you look in the text of the handbook, it says any changes to this handbook must be in writing, approved of, and signed by the president and chief executive officer or their designee. Any written changes to this handbook will be distributed to all employees so that employees will be aware of the new policies or procedures. So even if you adopt plaintiff's view that the handbook terms are part of this agreement, that anticipates notice. How does notice equate to an inability to retroactively change something when it says at any time? I think that... Why couldn't you give notice that we're going to retroactively cut your salary? Again, the handbook doesn't say company reserves the right to change at any time. It says company reserves the right to revise, modify, delete, or add to any and all policies, procedures, work rules, or benefits stated in this handbook or any other document except for the policy that will implement. So it doesn't actually say at any time. And I believe the letter agreement is the same in that regard. It doesn't say at any time. And I don't think the absence of that language suggests that it can be a retroactive change. I think it suggests the opposite, that it can only be a prospective change. Further support for that is the language of the handbook that I just read to you that says we have to give notice to everybody. Under Rhode Island law, contracts can be terminable at the discretion of either party upon notice. And that is a well-founded principle under Rhode Island law. So that itself does not defeat the agreement. But that's not this case. That wouldn't be at will. If notice is required before termination, that's not at will. At will means you can discharge in a heartbeat second. Right, but if continued employment is sufficient consideration for the agreement to arbitrate, we have an agreement to arbitrate today. Any issues that arise today, if you're working for me today. But nothing in the document suggests that tomorrow, should I fire you or should you quit, that I can go back in time and say, hey, we're not bound by agreement. The language of the handbook suggests it would be only a prospective change, if any change at all. And I don't concede that the handbook and the agreement should be read together. They were not presented together. There's no evidence they should be read together. There's multiple cases that I cited in the briefs that have a handbook referencing an arbitration agreement or a letter referencing an arbitration agreement. And the documents are not deemed to be read together. I would like to address the unconscionability. In order to support plaintiff's claim for unconscionability, he must show that there is some kind of fraud or there is some kind of uneven distribution of the terms of the agreement, some type of disparate terms that unduly favor one side or the other. In addition, he hasn't presented any of that evidence here. The plaintiff cites to the Baker case to support the proposition that the agreement here was unconscionable. I suppose the Baker case does stand for the proposition that if someone, if one of the signatories to a contract is not in the proper state of mind or does not have the capacity to sign the contract, that that could invalidate a contract. But the circumstances in Baker were so wildly different from what was present here. She was being admitted to a rehab facility coming out of the hospital right out of surgery. Quotes from the case say she was, quote, pumped up on pills, had a brain abnormality as evidenced by two CT scans. There were multiple facts in that case that just don't even come close to the facts that Mr. Brito has presented here in support of his unconscionability argument. So what you're saying in short, as I understand it, is there is always some level of disparity in any negotiations between an employer and a typical employee. But what you're saying is there's got to be something incrementally more than that disparity, something bordering on fraud or oppressive conduct before the doctrine of unconscionability kicks in. That's what this court has said. Specifically in Rosenberg versus Merrill Lynch, Pierce, Fenner and Smith. This is court has said there has to be some kind of fraud or oppression. And there's been no demonstration of fraud here. There's no terms of the agreement that plaintiff has cited are unusually oppressive. The only thing plaintiff relies upon are the circumstances surrounding him being presented with the agreement and his signature thereon. And those are simply not sufficient to justify his claim now after the fact that he didn't understand the agreement or didn't intend to sign on to it. I mean, it's understandable why black letter law says if someone signs something after the fact, they're deemed to have read it and understood it. Because if that wasn't the case, you can imagine the law of contracts would be much less secure. More than that, doesn't he? I mean, in terms of the circumstances surrounding the signing that he was presented with it, not given an opportunity to review it. Not given an opportunity to consult with counsel before signing it. Just sign it and get out of here. Also that there was no explanation of the contents of the documents except that in order to continue to work here, you got to sign this. So I would say that none of those things are required to prevent unconscionability. However, if you look closely at Mr. Britto's affidavit, and one point that jumped out to me is it says, I was not, it was not offered that I could take this home. It was not offered that I could have an attorney. But when you look at the brief, it says he was prevented from doing it. So those are two very different things. And, you know, he is an at-will employee. So an at-will employee does have, although maybe less power than the employer in that negotiation, they have some power because they can come to work the next day or not. So nothing about the facts presented by Mr. Britto suggests that he could not have taken it home or that he could not have said, you know what, interesting. I'd like to take this to my attorney and have my attorney review this before I sign it. And there's no facts in the record, but I can't imagine that he would have denied that opportunity to do so if he had chosen to do so. Counsel, just one housekeeping matter. It's a small thing, but it's important to me. You made reference to both Corbin and the restatement. And because this case and the previous case were not consolidated for purposes of appeal, for very good reason, I have lost track about what has been cited in which brief. So if you did not cite to those treatises in your brief, in this case, would you please file a 28-J letter with us with just the citations? I know that the other side did cite to Corbin. I'm just not sure if it was exactly the same provision. We don't need any argument. We just need the citations. Typically, Rule 28-J filings are for late-breaking authorities. I don't think either of those qualify as late-breaking, but your explanation was that this was an issue raised in the reply brief. And so if you would do that. And same with the other side. If there is a relevant provision, if you think she's citing the wrong provision, you can file a 28-J just letting us know which citation. Now, if you did file, if you did mention them in your brief, then I take it all back. Judge, they weren't mentioned in my brief for the very reason that you noted, which was this issue of mutuality of obligation was not argued at all by plaintiffs until their reply brief. So I didn't have the opportunity to do a reply to that, and I will send in the 28-J letter.  Just one more thing. What would constitute oppression? Well, I mean, I don't know that I'm in the position to create hypotheticals about facts that might be present to— Well, give me a definition. I think oppression— Give me a definition. So I'll give you a description from the First Circuit's own cases. It's more than—and forgive me, I have cited it in my brief. To prove an agreement is oppressive, it is not enough to merely show a defendant received the quote lion's share of the contract benefit. In addition, equality in bargaining power is not a sufficient reason to hold that arbitration agreements are invalid. And I took that quote from DeLuca v. Barron Stern Company, which is a District of Massachusetts 2001 case. That is quoting Gilmer v. Interstate Johnson-Lancorp, which is a United States Supreme Court case from 1991. Both are cited on page 33 of my brief. Those are two definitions of what it's not. What's the definition of what it is? Again, I mean, I don't know that I'm in a position to imagine hypotheticals of things that aren't present in my case. But I suppose that oppressive conduct could take the form of requiring an employee to travel out of state to attend an arbitration and have that travel be significant and not offer any—put in terms of an arbitration agreement that would make that travel virtually impossible or exceedingly difficult for the employee. And I'm guessing. I mean, I'm—but, you know, there could be terms in an arbitration agreement that would essentially foreclose the ability for the employee to arbitrate. The oppressive nature goes to the formation of the contract. I don't think that the oppressive nature—I mean, I think it could go to the formation of the contract, but I think it could go to the contract terms as well. That's what they're arguing here. How do we analyze, in terms of the formation of this contract, what is and is not oppressive? Their argument is that, given what happened, it is. Well, I mean, I think we have Baker, which says that if someone is not competent, perhaps, to sign an agreement, is suffering from health problems that prevent them from fully understanding the agreement, that that could suffice. I think in Baker also, the court said that Ms. Baker was presented with 10 very complicated healthcare-related agreements and documents and forms upon her admission to the rehab facility. That might suffice. Neither one of those circumstances is present here. Thank you.  I'd just like to address a couple of things. One is the letter agreement most definitely and emphatically states that they may change—they may terminate the employment relationship at any time, and they may change the terms of your employment, without limitation, the terms of your employment at any time. Documents signed by the parties. What's the significance of that? My sister indicated that there was some kind of limitation or condition on what changes— I thought she was responding to the inquiry about whether or not the employer could make a retroactive or retrospective change, and there's nothing in that language which indicates that the employer was so empowered. Your Honor, like I indicated before, I think the retrospective argument is a red herring, because if they can change at any time, rescind it, keep it, not do it, there is no—it's an illusory promise, and it's not enforceable. And on the issue of mutuality, I'd just like to quote from J.P. Livery. The words of a promise are illusory if they are conditional on some fact or event that was wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion, such that the words used do not in fact purport to limit future action. Again, you reserve the right to make changes at any time. It's totally within your control. But your sister says that that is a statement which applies to bilateral contracts, not to unilateral contracts. I mean, a contract for at-will employment, there is no obligation on the employer's part to keep the contract in effect at all, other than to pay the employee for any work he does up until the time it's terminated. It is my position that this is a bilateral contract. The letter of agreement, the global agreement— What does the letter of agreement bind the employer to do? It says that you're going to remain an employee and have all the same terms— No, what does it bind the employer to do? It binds them to be an employee until they terminate it. Does the employer sign the letter of agreement? Yes, Your Honor. Okay. Absolutely. And is the employer bound to do anything as a result? It says that as long as you're an employee, these are your pay and benefits. Yeah. I mean, if something—I mean, there is an arrangement here, and the employee says, yeah, okay, I'll agree to this and this, and I'll agree with you on the code of conduct and the arbitration agreement, and we'll go forward. So I don't think there's any question it's a bilateral contract. On the issue of unconscionability, I would just add briefly that— The Baker case suggests that, you know, you have a situation—by the way, the facts are unrebutted. Presented—this material is presented at the end of a five-minute meeting. Nothing in the meeting discusses the arbitration agreement. There's like one minute between the documents are distributed and they're signed. He's told, hey, look, you have to sign this and get it back right away. Okay. They want it back right away. Part of it is the letter agreement and the arbitration agreement are part of this packet that has to be signed. They're collected. They're presented. Collected all at once. No opportunity really to review it. No opportunity to take it to counsel, review it. And, again, like the Baker case, they're presented that way on purpose. They're presented like, hey, just sign this. This is like, yeah, just sign this. This is routine. We just got to get this done. It's all kind of informal. No effort made to make them understand what they're signing or what it's about or the significance. You have people, no legal training, no legal advice. Again, I submit that while it's not as extreme as the Baker case, the woman in the nursing home, I submit that it has the elements of something that we don't want to see when people are waiving their right to a jury trial, for instance. Should we assume that the code of ethics, which you are alleging is part of this contract but is not included in the record, doesn't have anything helpful in it to help us decide this? Maybe you can make that inference on exfoliation because we've been unable to get that page three code of conduct. We've been unable to get it. And it's not part of the record in this case at this point. I'm sorry, what was the discovery? There was very limited discovery in Brito. There was none in Conde Regis, Your Honor. And the only reason there was discovery in Brito was because another party moved to dismiss saying that they weren't the employer. A totally different issue. So we had a little discovery on that. That's how we discovered the handbook in Brito, and we didn't have it produced in Conde Regis. We asked for what that page three was, what this code of conduct was, and my recollection is we weren't able to obtain it. That addresses your question, Your Honor. I don't know by the fate of producer whether you can assume it. I don't know. We did at some point in the process ask for elusive page three. All right. We'll take that as submitted. Thank you so much. Thank you. All rise.